IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KENNETH HARRIS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:11-CV-3013-D |
| VS. | § | |
| | § | |
| DOMINGO RIVERA, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action under 42 U.S.C. § 1983 by a City of Dallas Fire-Rescue Department captain for alleged deprivations of his constitutional rights in connection with his arrest and criminal prosecution, defendants move under Fed. R. Civ. P. 12(c) for a judgment on the pleadings. For the reasons that follow, the court grants the motion as to plaintiffs' federal-law claims (in part on a basis that the court raises *sua sponte*), does not reach one defendant's defense of qualified immunity or plaintiffs' state-law claims, and grants plaintiffs leave to replead.

I

This is an action by plaintiffs Kenneth Harris ("Capt. Harris") and his wife Holly Harris ("the Harrises") alleging claims under 42 U.S.C. § 1983 and state law. At all times relevant to this suit, Capt. Harris was employed by the City of Dallas Fire-Rescue Department, for which he commanded a fire engine company. At approximately 3:16 a.m. on October 26, 2008, Capt. Harris' engine company received an emergency call notifying

it of a traffic collision in which persons had been injured and a vehicle overturned. Capt. Harris' engine proceeded to the location of the accident on an emergency basis and, on arrival, Capt. Harris assumed the position of incident commander.

In accordance with Fire-Rescue Department policy, Capt. Harris notified the City of Dallas dispatcher by radio that he needed one wrecker to remove an inoperable and damaged vehicle that was overturned as a result of the collision. The dispatcher acknowledged Capt. Harris' request and stated that the wrecker had been ordered. A period elapsed and no Dallas police responded to the location. Capt. Harris initiated another radio call to determine whether police had, in fact, been assigned. The dispatcher responded that no police units were available. After waiting an additional period, Capt. Harris again contacted the dispatcher and requested police units to respond on an emergency basis. Sometime thereafter, defendants Domingo Rivera ("Officer Rivera") and Angelo Dragija ("Officer Dragija"), both City of Dallas police officers, arrived at the scene.

After Officer Rivera assumed control of the accident investigation, Capt. Harris approached him to ask whether the police department still normally responded on a "Code 3" or emergency basis to freeway incidents. Officer Rivera told Capt. Harris that how and when the police department responded to such calls was a policy question and that if Capt. Harris wanted to know, he could ask the Chief of Police. Shortly thereafter, Capt. Harris again approached Officer Rivera and asked whether he knew what had happened to the wrecker Capt. Harris had ordered. Officer Rivera did not respond. The Harrises allege that,

at the time, Officer Rivera was facing partially away from Capt. Harris such that Capt. Harris thought that because of the extreme noise and confusion in the area, Officer Rivera might not have heard him.  The Harrises assert that Capt. Harris approached Officer Rivera and "lightly placed two fingers of his right hand on [Officer Rivera's] arm to attempt to get [Officer Rivera's] attention and in order to be sure that he was heard."  Compl. ¶ 4.5.  They aver that Capt. Harris' action was in no way violent or offensive.  In response, Officer Rivera turned toward Capt. Harris in an aggressive and violent manner, grabbed his arm, doubled his arm behind his back, slammed Capt. Harris against the side of the fire engine, and handcuffed his hands tightly behind his back.  When Capt. Harris demanded to know what Officer Rivera thought he was doing, Officer Rivera told him that he would be charged with aggravated assault on a police officer and would be taken to jail.  Officer Dragija witnessed Officer Rivera's actions and heard his statements and remarks but did nothing to prevent his actions.

The Harrises allege that Capt. Harris did not resist Officer Rivera's efforts to arrest him.  Instead, he instructed his engine crew to contact the nearest battalion chief of the Dallas Fire-Rescue Department and request that he come to the scene at once.  Capt. Harris' crew complied with this request, and, shortly thereafter, Dallas Fire-Rescue Battalion Chief A.W. Walker ("Chief Walker") arrived at the scene.  Meanwhile, Officer Rivera had telephoned defendant Joseph R. Mullen, Jr. ("Sgt. Mullen"), who was a police sergeant and Officer Rivera's regular supervisor, to ask him to come to the location.  Although off duty,

Sgt. Mullen came to the scene in his personal vehicle and acted as a police supervisor.

Once Sgt. Mullen arrived, he telephoned Dallas Police supervisors at the Dallas County Jail to have them approve, in advance, Capt. Harris' arrest for interfering with a public servant in the performance of his duties and assault on a public servant (a felony offense). Sgt. Mullen was advised that, based on his description of the incident, the matter should be handled in the field (i.e., no custodial arrest should be made), and that the highest charge the supervisor would accept would be a Class C misdemeanor assault charge for "offensive contact." Dissatisfied with these legal impediments, and disregarding the supervisors' advice, Sgt. Mullen ordered Capt. Harris to be placed in custody, arrested, and placed in a patrol car with his hands handcuffed behind his back. Sgt. Mullen instructed Officer Dragija to act as the arresting officer, to transport Capt. Harris to jail, and to charge him with felony assault on a public servant.

While at the scene, Sgt. Mullen never spoke with Capt. Harris, but did speak directly with Chief Walker. Chief Walker requested that Capt. Harris be immediately released to return to his duties. Sgt. Mullen refused to talk further with Chief Walker and implied that if he did not immediately cease all contact with police department personnel, he would also be arrested. Chief Walker walked away and took over command of the incident to protect fire department personnel, the victims, and the damaged vehicles.

Capt. Harris was placed in Officer Dragija's police vehicle to be transported to jail. While in the vehicle, Officer Dragija informed Capt. Harris that he had no part in the

decision to arrest him or to file charges and, further, that he did not want to be involved in

"this mess," but was just following Sgt. Mullen's orders.  *Id.* ¶ 4.13.  En route to the jail,

Officer Dragija received a radio and/or telephone call.  Afterward, he suddenly pulled the

vehicle off the freeway into a darkened area near the parking lot of a service station.  Several

other Dallas police officers in police vehicles soon arrived.  Officer Dragija exited the

vehicle.  Although from the vehicle Capt. Harris could not see the other officers clearly, he

believed that both Officer Rivera and Officer Dragija were present, and he "feared that he

could be beaten or worse."  *Id.* at ¶ 4.14.  Instead, following a lengthy delay, Officer Dragija

returned to the vehicle and transported Capt. Harris to jail.

On arriving at the jail, Capt. Harris was brought before a "book in" police supervisor,

a sergeant.  Officer Dragija informed the supervisor that Capt. Harris was being charged with

"[a]ggravated assault on a police officer."  *Id.* ¶ 4.15.  The book-in sergeant left the area, and

a higher-ranking police official promptly appeared and stated: "This ain't going down like

this, don't write another thing until you hear from me."  *Id.*  Capt. Harris was then taken to

another area, where his handcuffs were removed.  He was forced to put on an orange

jumpsuit and was denied shoes, even though he requested them.  He was then "processed"

and forced to sit in a holding area occupied by inmates who laughed at and ridiculed him.

Sometime thereafter, Capt. Harris was advised that the charges against him had been reduced

to "offensive contact" and that he would be released from jail on his own recognizance

without the requirement of posting bond.  Officer Dragija then wrote Capt. Harris a citation,

and he was released to Chief Walker at approximately 7:15 a.m.

Following the arrest and release of Capt. Harris, the City of Dallas Police Department and the City of Dallas Fire-Rescue Department each conducted independent investigations of the conduct of all parties. During the course of this investigation, Officer Rivera, Officer Dragija, and Sgt. Mullen were required to give written statements under oath. The Harrises allege that, in the course of both investigations, Officer Rivera, Officer Dragija, and Sgt. Mullen attempted to manufacture evidence to support the groundless charges against Capt. Harris and perjured themselves as to the actual events and circumstances. They aver that the City of Dallas prosecuted Capt. Harris on the charge of offensive contact.

In March 2011 the case against Capt. Harris was called to trial and Officers Rivera and Dragija testified against him. During the trial, Officers Rivera and Dragija repeated their false and perjured testimony, essentially as they had given it to fire and police investigators. Following a lengthy jury trial that resulted in a mistrial, the criminal charges against Capt. Harris were dismissed on March 31, 2011.

On November 3, 2011 the Harrises filed the instant suit against Officer Rivera, Officer Dragija, and Sgt. Mullen. They assert a claim under 42 U.S.C. § 1983 for false arrest, illegal seizure of Capt. Harris' person, and the use of excessive and unreasonable force, in violation of Capt. Harris' Fourth and Fourteenth Amendment rights. They also bring a claim under § 1983 for causing and participating in the unlawful prosecution of criminal charges using manufactured evidence and perjured testimony, without probable

cause, in violation of Capt. Harris' Fourth, Fifth, and Fourteenth Amendment rights. The Harrises also allege a claim for conspiracy to violate 42 U.S.C. § 1983 and plaintiffs' civil rights,[1] and they allege state-law claims for false arrest, the use of excessive and unreasonable force, unlawful seizure of Capt. Harris' body, false imprisonment, and unlawful filing and malicious prosecution of criminal charges.

Defendants move under Rule 12(c) for partial judgment on the pleadings. They argue that the Harrises' federal claims are barred by a two-year statute of limitations; that plaintiffs' Fifth Amendment claim fails to state a claim for relief because defendants are not federal actors; that plaintiffs have failed to plead a plausible conspiracy claim; that plaintiffs have failed to plead a plausible constitutional "malicious prosecution" claim; and that Sgt. Mullen is entitled to qualified immunity based on undisputed facts pleaded in his answer. The Harrises oppose the motion as to most of their claims.

---

[1]The court recognizes that a plaintiff can maintain under § 1983 a claim of conspiracy to deprive him of constitutional rights. *See Bullard v. City of Hous.*, 1996 WL 4405777, at *4 (5th Cir. July 2, 1996) (per curiam); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992). Section 1983, however, cannot be "violated." "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates[,]" and an "underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (internal quotation marks omitted) (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).

II

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "'A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *See Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.) (citing *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010)).

In deciding defendants' motion, the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). To survive defendants' motion, the Harrises must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

## III

Defendants contend that plaintiffs' federal-law claims are barred by limitations.

## A

Limitations is an affirmative defense.  *See* Rule 8(c)(1).  "'Although dismissal under Rule 12[(c)] is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.'"  *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)), *appeal docketed*, No. 12-11085 (5th Cir. Oct. 26, 2012); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint.").  In other words, defendants are not entitled to dismissal under Rule 12(c) unless the Harrises have "pleaded [themselves] out of court by admitting

to all of the elements of the defense." *Sivertson*, 2011 WL 4100958, at *3.

B

Because Congress has not adopted a statute of limitations for actions brought under 42 U.S.C. § 1983, the limitations period is determined by reference to the appropriate state statute of limitations and coordinate tolling rules. *Bd. of Regents of the Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 483-84 (1980). In § 1983 actions, district courts apply the forum state's personal injury limitations period. *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994). The Texas general personal injury limitations period is two years. *Id.*; Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2002).

Although the statute of limitations is governed by Texas law, federal law determines when a cause of action under 42 U.S.C. § 1983 accrues. *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). "Ordinarily, a cause of action under section 1983 accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *Price v. City of San Antonio*, 431 F.3d 890, 893 (5th Cir. 2005) (per curiam) (quoting *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992)); *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001) (same).

Defendants argue that the complaint makes clear that Capt. Harris' seizure (which includes both Capt. Harris' initial detention and his custodial arrest), all uses of physical force against him, and the initiation of a criminal charge against him occurred on October 26, 2008. Defendants argue that, because the Harrises did not file their complaint until

- 10 -

November 3, 2011, they failed to file suit within the applicable two-year limitations period.

The Harrises respond that, under *Price*, claims for unlawful seizure and false arrest, in conjunction with a malicious prosecution case, are part of the malicious prosecution claim, and therefore accrue at the same time as does the malicious prosecution claim, i.e., when criminal proceedings are terminated favorably to the plaintiff. Accordingly, they argue that the statute of limitations for their claim for malicious prosecution, unlawful seizure, and false arrest did not begin to run until the criminal charges against Capt. Harris were dismissed on March 31, 2011.

## C

In *Price* the Fifth Circuit held that "the statute of limitations does not begin running on section 1983 prosecution claims until proceedings have terminated in the plaintiff's favor." *Price*, 431 F.3d at 894. The panel cited *Brandley v. Keeshan*, 64 F.3d 196, 199 (5th Cir. 1995), for the proposition that "when false arrest claims are brought in conjunction with such claims, the false arrest claims are 'essentially part' of the prosecution claims and therefore accrue at the same time." *Price*, 431 F.3d at 894 (quoting *Brandley*, 64 F.3d at 199). Because criminal proceedings were still pending against the plaintiff in *Price*, the panel held that neither his false arrest nor his prosecution claim had yet accrued. *Id.* Thus it was erroneous for the district court to dismiss such claims as barred by the statute of limitations. *Id.*

In 2007 the Supreme Court addressed, in *Wallace v. Kato*, 549 U.S. 384 (2007),

whether a § 1983 claim based on an allegedly unconstitutional arrest was timely filed.  In *Wallace* the plaintiff had been arrested in 1994 and convicted of first degree murder.  *Id.* at 386.  On direct appeal, the state appellate court held that the officers had arrested the plaintiff without probable cause, in violation of the Fourth Amendment, and, after further appeals, concluded that the effect of the illegal arrest had not been sufficiently attenuated to render the plaintiff's statements admissible, and remanded the case for a new trial.  *Id.* at 387.  After the prosecutors dropped the charges against the plaintiff on April 10, 2002, the plaintiff filed on April 2, 2003 a § 1983 suit seeking damages arising from his unlawful arrest.  *Id.*  The district court granted summary judgment on the plaintiff's claim and the Seventh Circuit affirmed, holding that the § 1983 suit was time-barred because the plaintiff's cause of action accrued at the time of his arrest, and not when his conviction was later set aside.  *Id.*  The Supreme Court granted certiorari and affirmed, explaining:

> If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.  From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself.

*Id.* at 390 (internal quotation marks and citations omitted).  The Court declined to hold that, in circumstances where a § 1983 claim accrues *before* a criminal conviction is set aside (at which point the plaintiff would be able to file a malicious prosecution claim), the statute of limitations on the already-accrued § 1983 claim is tolled until the criminal conviction is set aside.  *Id.* at 394-95.  Instead, it held that "the statute of limitations upon a § 1983 claim

seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 397.

The Harrises argue that because the plaintiff in *Wallace* did not assert a claim for malicious prosecution, *Wallace* did not change the Fifth Circuit's holding in *Price* that, when false arrest claims are brought *in conjunction with* malicious prosecution claims, both claims accrue at the same time. The court disagrees. Although *Wallace* did not involve a false arrest claim brought in conjunction with a malicious prosecution claim, the Court in *Wallace* clearly held that the statute of limitations for a false arrest claim is not tolled until the prosecution terminates the case in the plaintiff's favor. Moreover, numerous courts within the Fifth Circuit have held that *Wallace* abrogated *Price* and *Brandley*, on which *Price* relied. Recently, in *Humphreys v. City of Ganado, Texas*, 467 Fed. Appx. 252 (5th Cir. 2012) (per curiam), the Fifth Circuit held in an unpublished opinion that, even though the plaintiff alleged § 1983 claims for unreasonable search and seizure, false arrest, *and malicious prosecution*, "the statute of limitations on [the plaintiffs'] claim for false arrest began running, at the latest, when he was indicted in July 2005," and not when the charges against him were dismissed in July of 2009. *Id.* at 256 (citing *Wallace*, 549 U.S. at 391); *see also Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008) (per curiam) (noting, in case in which plaintiff brought § 1983 claim based both on false arrest and malicious prosecution, that to the extent *Wallace* conflicted with the holding in *Brandley* that a false arrest cause

of action accrues when the criminal prosecution terminates in favor of the accused, *Wallace* abrogates *Brandley*, and remanding to district court to determine date on which plaintiff was detained pursuant to legal process because statue of limitations for false arrest claim began to run from that date, not date prosecution terminated case in plaintiff's favor); *LeBlanc v. City of Haltom City*, 2011 WL 2149908, at *5 (N.D. Tex. May 31, 2011) (McBryde, J.) (noting other district court decisions in which courts "have ruled that the limitations tolling principle announced in *Brandley* and followed in *Price* was abrogated by *Wallace*," and holding that "the reason given in *Wallace* for non-tolling of a § 1983 claim seeking damages for false arrest in violation of the Fourth Amendment applies equally to claims seeking damages for unconstitutional searches and seizures and related activities.").

The court concludes that, to the extent *Brandley* and *Price* hold that the statute of limitations for a § 1983 claim alleging false arrest or unconstitutional seizure is tolled until the criminal prosecution terminates in favor of the accused, *Wallace* abrogated *Brandley* and *Price*.  Because the Harrises became aware of the injuries on which they base their claim for false arrest, illegal seizure, and the use of excessive and unreasonable force on the day the injuries allegedly occurred—October 26, 2008—the statute of limitations began to run on each component of this claim that day.  *See Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002) (stating that limitation period begins to run "when the plaintiff 'becomes aware that he has suffered an injury or has sufficient information to know that he has been injured'" (quotation omitted)); *Piotrowski*, 237 F.3d at 576 (stating that cause of action accrues when

plaintiff knows of existence of an injury and the connection between the injury and defendant's actions).

Plaintiffs allege that Capt. Harris received the call summoning him to the scene of the accident at 3:16 a.m. on October 26, 2008.  They assert that, after Capt. Harris "lightly placed two fingers of his right hand on Defendant Rivera's arm to attempt to get Defendant Rivera's attention," Officer Rivera grabbed Capt. Harris' arm, slammed him against the side of the fire engine, and handcuffed him and told him he would be charged with aggravated assault on a police officer and would be taken to jail "despite the fact that [Capt.] Harris had done nothing wrong." Compl. ¶¶ 4.5-4.6.  They further allege that Sgt. Mullen ordered Capt. Harris to be placed in custody and arrested, even though he knew "there was absolutely no factual or legal basis to charge [Capt. Harris] with felony assault on a public servant." *Id*. at ¶ 4.11.  The Harrises aver that, after Capt. Harris arrived at the Jail, he was brought before a "book in" police supervisor and was then "processed," before being charged with "offensive contact" and released from the Jail at approximately 7:15 a.m. that same day (October 26, 2008). *Id*. at ¶¶ 4.15-4.17.  In sum, plaintiffs have affirmatively pleaded that all of the events related to their § 1983 claim for false arrest, illegal seizure, and the use of excessive and unreasonable force occurred on October 26, 2008.  Accordingly, the statute of limitations on these claims expired on October 26, 2010, over one year before the Harrises filed their complaint on November 3, 2011.  The court therefore grants defendants' Rule 12(c) motion as to plaintiffs' claim under § 1983 for false arrest, illegal seizure, and the use

of excessive and unreasonable force.[2]

## D

Plaintiffs' § 1983 conspiracy claim is also governed by a two-year statute of limitations. *See Piotrowski*, 237 F.3d at 576 ("The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state . . . . Texas has a two year statute of limitations for personal injury claims."). For purposes of determining whether the statute of limitations has expired, when a civil conspiracy is alleged, "the actionable civil injury to a plaintiff results from the overt acts of the defendants, not from the mere continuation of a conspiracy." *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987). It is axiomatic that a cause of action accrues, and thus the statute of limitations begins to run, "as soon as plaintiff knew or should have known of the overt acts involved in the alleged conspiracy." *Id.*

Plaintiffs base their conspiracy claim on allegations that defendants conspired to participate in the commission of each of the constitutional violations set forth in Counts One and Two. They allege that each defendant "supported the other in the making of the original false arrest, in the use of unlawful and excessive force, in the falsifying of government

_____

[2]Because the court is granting defendants' Rule 12(c) motion as to plaintiffs' claim under § 1983 for false arrest, illegal seizure, and the use of excessive and unreasonable force, it does not address defendants' argument that Sgt. Mullen is entitled to qualified immunity. Although Sgt. Mullen appears to have pleaded qualified immunity as an affirmative defense to all three of plaintiffs' federal claims, defendants only raise this defense in their Rule 12(c) motion as to plaintiffs' claims for false arrest and unlawful seizure. If plaintiffs replead and defendants intend to assert anew that qualified immunity applies to the actions of Sgt. Mullen, defendants should address all claims as to which they maintain the defense applies.

reports and records, by giving false testimony to investigators and by giving false testimony at trial." Compl. ¶ 7.2.  As explained above, the use of unlawful and excessive force and the making of a false arrest both occurred during the early morning hours of October 26, 2008. It is apparent from the face of the complaint that Capt. Harris was aware of these alleged wrongs at the time they occurred on that date.  Accordingly, to the extent plaintiffs allege that defendants conspired to violate their Fourth and Fourteenth Amendment rights and made the original false arrest and used unlawful and excessive force in furtherance of this conspiracy, their claim is time-barred.

Defendants argue that the other alleged overt acts in furtherance of the conspiracy are merely the continuation of the conspiracy and do not extend the limitations period.  The court disagrees.  Although the "mere continuation of a conspiracy" does not extend the limitations period, *see Helton*, 832 F.2d at 335, plaintiffs have alleged more than the "mere continuation" of the conspiracy.  In support of their allegations that defendants conspired to commit the constitutional violations set forth in Count Two of the complaint, plaintiffs aver that defendants falsified government reports and records, provided false testimony to investigators, and testified falsely at trial.  In *Kadar Corp. v. Milbury*, 549 F.2d 230 (1st Cir. 1977), on which the Fifth Circuit relied in *Helton*, the court explained "that a cause of action for each invasion of the plaintiff's interest arises at the time of that invasion and . . . the applicable statute of limitations runs from that time."  *Kadar*, 549 F.2d at 234 (brackets and citations omitted) (considering whether any additional overt acts occurred during the

limitations period in deciding whether conspiracy claim was time-barred).   Therefore, "[i]njury and damage in a civil conspiracy action flow from *the overt acts*, not from 'the mere continuance of a conspiracy.'" *Id.* (emphasis added) (quoting *Hoffman v. Halden*, 268 F.2d 280, 303 (9th Cir. 1959)); *see also O'Connor v. St. John's Coll.*, 290 Fed. Appx. 137, 141 (10th Cir. 2008) ("The applicable statute of limitations . . . runs separately from each overt act of the conspiracy that allegedly caused injury"); *Graff v. Kohlman*, 28 Fed. Appx. 151, 154 (3d Cir. 2002) ("the statute of limitations for civil conspiracies runs separately for each overt act causing damage." (citations omitted)).

The alleged falsification of government reports and records, providing false testimony to investigators, and testifying falsely at trial would each constitute an "overt act" supporting the allegation that defendants conspired to violate 42 U.S.C. § 1983 by causing and participating in the unlawful prosecution of criminal charges using manufactured evidence and perjured testimony without probable cause, as alleged in the complaint.   This alleged constitutional violation is separate from the allegation that defendants made a false arrest and used excessive force on October 26, 2008.   The complaint does not specify the dates on which defendants allegedly falsified government reports and records, provided false testimony to investigators, or testified falsely at trial.   Plaintiffs only allege that these acts occurred "[f]ollowing the arrest and release of [Capt.] Harris."   Compl. ¶ 4.20.   Capt. Harris' criminal trial did not conclude until March 31, 2011.   It is therefore plausible that each of these alleged "overt acts"—falsifying government reports and records and giving false

testimony to investigators and at trial—occurred within the two-year limitations period.

Accordingly, to the extent plaintiffs base their conspiracy claim on the allegation that

defendants falsified government reports and records and gave false testimony to investigators

and at trial in furtherance of a conspiracy to violate Capt. Harris' rights under the Fourth,

Fifth, and Fourteenth Amendments, it is not apparent from the face of their complaint that

this aspect of their conspiracy claim is time-barred.

E

Although defendants seek dismissal of "Harris' Federal Claims" based on limitations,

it is unclear whether they seek dismissal of Count Two on that basis.  In Count Two the

Harrises assert a § 1983 claim for causing and participating in the unlawful prosecution of

criminal charges using manufactured evidence and perjured testimony, without probable

cause.  Assuming that defendants do seek dismissal of Count Two, the court holds that the

Harrises have not pleaded facts that would enable the court to determine, from the face of

the complaint, that Count Two is time-barred.

The Harrises allege that the charges against Capt. Harris were dismissed on March

31, 2011.  Because this suit was filed fewer than two years after the underlying criminal

proceeding terminated in Capt. Harris' favor, Count Two is timely.  *See Heck v. Humphrey*,

512 U.S. 477, 489-90 (1994) ("Just as a cause of action for malicious prosecution does not

accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a

§ 1983 cause of action for damages attributable to an unconstitutional conviction or sentence

does not accrue until the conviction or sentence has been invalidated." (citations omitted)).

The court therefore declines to grant judgment on the pleadings dismissing Count Two as

time-barred.

## IV

The court next considers whether the Fifth Circuit's opinion in *Castellano v. Fragozo*,

352 F.3d 939 (5th Cir. 2003) (en banc), precludes Count Two as a matter of law.

## A

In *Castellano* the Fifth Circuit held that "causing charges to be filed without probable

cause [does] not without more violate the Constitution."   *Id.* at 953.   Accordingly, a

freestanding § 1983 claim based solely on "malicious prosecution" is not cognizable.   *Id*. at

942.   The *Castellano* panel added, however, that "additional government acts that may attend

the initiation of a criminal charge could give rise to claims of constitutional deprivation."

*Id*. at 953.   Thus "[t]he initiation of criminal charges without probable cause may set in force

events that run afoul of explicit constitutional protection—the Fourth Amendment if the

accused is seized and arrested, for example, or other constitutionally secured rights if a case

is further pursued."   *Id*.   To prevail, therefore, a § 1983 plaintiff must allege that officials

violated specific constitutional rights in connection with a "malicious prosecution."   *Cuadra*

*v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010); *see also Castellano*, 352 F.3d

at 945 ("[W]e must insist on clarity in the identity of the constitutional violations asserted.").

B

Defendants argue that Count Two is a freestanding claim because any claim that the Harrises may have had for false arrest under the Fourth Amendment is time-barred, any claim they may have had under the Fifth Amendment must be dismissed because plaintiffs have failed to allege that defendants were federal actors, and any claim they may have had under the Fourteenth Amendment for the denial of procedural due process fails based on the pleadings.

In their Rule 7 reply, which plaintiffs adopt and incorporate into their response to defendants' motion for judgment on the pleadings, plaintiffs acknowledge that a stand-alone claim for malicious prosecution is no longer actionable.  They argue, however, that their § 1983 claim for false arrest "clearly states a claim under the Fourth Amendment for the period of time from the original arrest or detention up to and including the time of the actual commencement of the resulting criminal proceedings," and that their § 1983 claim for unlawful institution and prosecution of criminal charges based on perjured or manufactured evidence "clearly states a claim under the Due Process Clause of the Fourteenth Amendment for the period of time from the commencement of the criminal proceedings through the trial and until the criminal prosecution is concluded in the Plaintiff's favor."  Ps. R. 7 Reply 14-15.

C

Because *Castellano* precludes plaintiffs from bringing a free-standing "malicious prosecution" claim, for Count Two to survive defendants' motion to dismiss, plaintiffs must plausibly allege that defendants violated a specific constitutional right in connection with the alleged "malicious prosecution." *Caudra*, 626 F.3d at 812; *Castellano*, 352 F.3d at 945, 953.

To the extent plaintiffs allege that defendants' actions from the original arrest or detention up to and including the time of the actual commencement of the resulting criminal proceedings violated the Fourth Amendment,[3] the court concludes, for the reasons explained in § III(B), that this claim is time-barred.  Accordingly, Count Two cannot survive under the rationale of *Castellano* unless plaintiffs have pleaded a plausible Fourteenth Amendment due process claim.

In support of their due process claim, plaintiffs allege "[t]he conduct of the Defendants also constituted a violation of [Capt.] Harris' right to be free from the unlawful institution and prosecution of criminal charges based on manufactured evidence and perjured testimony as guaranteed by the" Fourteenth Amendment to the United States Constitution. Compl. ¶ 6.2.  In *Castellano* the Fifth Circuit agreed that the "manufacturing of evidence and knowing use of perjured testimony attributable to the state is a violation of due process." *Castellano*, 352 F.3d at 958.  The court cautioned, however, that, on remand, the plaintiff

---

[3]The court notes that plaintiffs' Rule 7 reply suggests that they only intend to base Count Two on an alleged violation of the Fourteenth Amendment Due Process Clause. *Id.*

would "face the well-established rule that prosecutors and witnesses, including police officers, have absolute immunity for their testimony at trial." *Id.*

Defendants argue that plaintiffs' due process claim fails based on the pleadings because of the "well-settled rule" that trial witnesses enjoy absolute immunity for testimony given in adversarial judicial proceedings. Ds. Br. 17. Because plaintiffs do not allege, other than by conclusory assertion, that defendants manufactured evidence, their Fourteenth Amendment claim reduces solely to allegations that Officers Rivera and Dragija offered false and perjured testimony at trial.

The Supreme Court held in *Briscoe v. LaHue*, 460 U.S. 325 (1983), that police officers are absolutely immune from § 1983 perjury claims based on their testimony during a criminal trial. *Briscoe*, 460 U.S. at 326; *see also Castellano*, 352 F.3d at 958 (noting "the well-established rule that prosecutors and witnesses, including police officers, have absolute immunity for their testimony at trial."). Defendants thus argue that, under the rule announced in *Briscoe*, plaintiffs cannot plausibly plead a due process violation based solely on allegedly false or perjured testimony given during Capt. Harris' criminal trial.

In response, plaintiffs argue that the "complaining witness" exception to the rule of absolute immunity dictates that the police officers who testified at Capt. Harris' trial enjoy no absolute immunity for their perjury. They cite *Enlow v. Tishomingo County, Mississippi*, 962 F.2d 501 (5th Cir. 1992), and argue that the Fifth Circuit has rejected the testifying witness immunity rule in the context of malicious prosecution cases. In *Enlow*, decided

before *Castellano* announced the rule that stand-alone claims for malicious prosecution are no longer actionable, the panel refused to extend the holding of *Briscoe* to afford absolute immunity to a highway patrol officer's grand jury testimony. *Id.* at 511-12. The panel explained:

> In a defamation action, as was *Briscoe*, a plaintiff seeks to hold a perjurious witness liable for the defamatory effect of his testimony; at common law, the witness enjoyed absolute immunity upon a threshold showing that the allegedly defamatory statements were relevant to the judicial proceeding. In a malicious prosecution action, however, as in the present case, a plaintiff seeks to hold the complaining witness liable for the witness's role in the initiation of a baseless prosecution; at common law, complaining witnesses were not absolutely immune.

*Id.* at 511 n.29 (citations omitted). Plaintiffs argue that, based on the holding in *Enlow*, "at least in the Fifth Circuit, the police officers who testified specifically, Rivera and Dragija, enjoy no absolute immunity for perjury if they serve as complaining witnesses which the Complaint alleges and the record supports that they in fact did." Ps. Br. 14. The court disagrees.

Although courts have recognized an exception to the doctrine of absolute testimonial immunity "insofar as [an official] performed the function of a complaining witness," *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997); *see also Malley v. Briggs*, 475 U.S. 335, 340-41 (1986), this exception does not extend to testimony given during a criminal trial. *Briscoe*,

460 U.S. at 326.[4]  Plaintiffs do not allege that, in testifying falsely at trial, defendants were acting as "complaining witnesses."  In fact, they allege that defendants were testifying witnesses who gave "perjured testimony" at Capt. Harris' criminal trial.  Compl. ¶ 6.2.  Defendants are therefore entitled to absolute testimonial immunity in this respect.  *See Briscoe*, 460 U.S. at 326.  Plaintiffs offer no other support for their alleged Fourteenth Amendment due process deprivation.

Because plaintiffs have failed to plead an actionable claim in addition to the stand-alone "malicious prosecution" claim, under binding Fifth Circuit authority, Count Two must be dismissed.  *See Castellano*, 352 F.3d 953 ("'[M]alicious prosecution' standing alone is no violation of the United States Constitution[.]").

V

Although the court concludes in § III(D) that plaintiffs' conspiracy claim is not time-barred to the extent it is based on the allegation that defendants conspired to participate in the commission of the constitutional violations set forth in Count Two, the court raises *sua*

_____

[4]Recently, in *Rehberg v. Paulk*, ___ U.S. ___, 132 S. Ct. 1497 (2012), the Supreme Court extended the holding of *Briscoe* and held that a "complaining witness" who testifies during an *ex parte* grand jury proceeding is entitled to the same immunity in a § 1983 action as a witness who testifies at trial.  *Id.* at 1500.  In explaining its rationale, the Court noted that it would be "anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to prosecute."  *Id.* at 1508 (citations omitted).

*sponte*[5] that this claim should be dismissed for a different reason. "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'" *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (citation omitted); *see also Tittle v. Raines*, 231 F.Supp.2d 537, 553 (N.D. Tex. 2002) (Lindsay, J.) ("A conspiracy by itself is not actionable under § 1983." (citation omitted)). Because, as explained *supra* at § IV(C), plaintiffs have failed to plead a plausible claim for a violation of Harris' right to be free from the unlawful institution and prosecution of criminal charges based on manufactured evidence and perjured testimony, as guaranteed by the Fourth, Fifth, and Fourteenth Amendments, they have also failed to state a claim for conspiracy to commit these alleged constitutional violations.

The court raises *sua sponte* this basis for judgment dismissing plaintiffs' § 1983 conspiracy claim. Plaintiffs may in their amended complaint address this deficiency if they have grounds to do so.

---

[5]Because the court is allowing plaintiffs to replead, the procedure employed here is fair and is therefore permissible. *See, e.g.*, *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 733-34 n.7 (N.D. Tex. 2011) (Fitzwater, C.J.) (noting that district court has authority to consider sufficiency of complaint and dismiss action on its own motion as long as procedure employed is fair, raising ground for dismissal *sua sponte*, and concluding that procedure was fair because court was granting plaintiffs leave to replead).

VI

The Harrises also assert state-law claims for false arrest, the use of excessive and unreasonable force, unlawful seizure of Capt. Harris' body, false imprisonment, and unlawful filing and malicious prosecution of criminal charges. Although this court can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), "when all federal claims are dismissed or otherwise eliminated from a case prior to trial, [the Fifth Circuit has] stated that [its] 'general rule' is to decline to exercise jurisdiction over the pendent state law claims." *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc). Having dismissed the Harrises' federal-law claims, the court in its discretion declines to exercise supplemental jurisdiction over their state-law claims.[6]

VII

Although the court is granting defendants' motion for judgment on the pleadings, it will permit the Harrises to replead. *See, e.g.*, *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). Because there is no indication

---

[6]If the court later determines that the Harrises have pleaded a plausible federal-law claim, it can address any proper challenge to the viability of their state-law claims.

that the Harrises cannot,[7] or are unwilling to, cure the defects that the court has identified, the court grants 30 days from the date this memorandum opinion and order is filed to file an amended complaint.

*   *   *

For the foregoing reasons, the court grants defendants' July 18, 2012 Rule 12(c) motion for partial judgment on the pleadings and dismisses the Harrises' federal claims under 42 U.S.C. § 1983.  Because the court is dismissing all federal claims alleged, it declines to exercise supplemental jurisdiction over the Harrises' state-law claims.  The Harrises may file an amended complaint within 30 days of the date this memorandum opinion and order is filed.

**SO ORDERED.**

January 23, 2013.


SIDNEY A. FITZWATER
CHIEF JUDGE

---

[7]Although the court questions whether the Harrises can replead in a manner that avoids the limitations bar as to their time-barred claims, it will give them the opportunity to amend since the court is addressing the sufficiency of their complaint.